Angela EISERT and Thomas Myles, Plaintiffs,

v.

TOWN OF HEMPSTEAD, Town of Hempstead Civil Service Commission, Nassau County Republican Committee, and Town of Hempstead Republican Committee, Defendants.

No. 93 CV 2388 (ADS).

United States District Court, E.D. New York.

March 6, 1996.

Law Offices of Frederick K. Brewington by Frederick K. Brewington. Daniel Cherner, New York City, for Plaintiffs.

Rivkin, Radler & Kremer by Kenneth Novikoff, Town of Hempstead and Town of Hempstead Civil Service Commission, Uniondale, New York, for Defendants.

Kwiatkowski & Ryan by John Ryan, Nassau County Republican Committee and Town of Hempstead Republican Committee, Floral Park, New York, for Defendants.

SPATT, District Judge:

Presently before the Court are three motions. The plaintiffs, Angela Eisert ("Eisert") and Thomas Myles ("Myles" collectively the "plaintiffs") have brought a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). The defendants, the Town of Hempstead (the "Town") and the Town of Hempstead Civil Service Commission (the "Commission," together the "Town defendants") have brought a motion for summary judgment by order to show cause to dismiss the remaining state law claims. The defendants Nassau County Republican Committee (the "Committee") and the Town of Hempstead Republican Committee (the "Town Committee," together the "Committee defendants") have brought a separate motion for summary judgment also to dismiss the remaining state law claims.

## I. *Background*

The essence of this lawsuit is that the defendants allegedly deprived the plaintiffs "of employment through a patterned use of fraud, misrepresentation, misinformation, political patronage, abuse and manipulation of laws, rules and regulations." The plaintiffs contend that their denial of employment violated 42 U.S.C. § 1983, the First Amendment of the United States Constitution, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and related state law.

On February 5, 1996, this Court granted the defendants' motions for summary judgment with respect to the plaintiffs' section 1983 and RICO claims on the grounds that

those causes of actions were time barred. The Court, however, retained supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 due to the fact that this case is on the eve of trial and because of the Court's concern that these claims would be time barred if refiled in state court. Familiarity with the Court's earlier decision is presumed. *See Eisert v. Town of Hempstead,* 1996 WL 50022 (E.D.N.Y.1996).

The facts of this case are briefly recounted as follows. The plaintiffs, residents of Nassau County, took a civil service examination in 1987 in order to apply for the position of Assistant to the Commissioner of Purchasing for the Town of Hempstead. Myles received the second highest score on the examination and Eisert received the third highest score. According to New York Civil Service Law § 61 the appointing officer, in this case Frank Lauria ("Lauria"), the Purchasing Commissioner, is required to fill the position with one of the top three scorers. This method of selection is referred to as the "rule of three." If one of the top three scorers declines the position, his or her application is replaced with that of the next highest scorer. This process is repeated until the appointing officer has a pool of three applicants from which to choose.

On August 18, 1987, the plaintiffs were told to appear for interviews. Eisert admits that during her interview she was questioned regarding her political affiliation. Further, Eisert asserts that she was originally offered a position, apparently during her interview. However, as indicated below, Lauria subsequently changed his mind. Moreover, on September 3, 1987, Eisert called Lauria's office to inquire as to whether a final hiring decision had been made. She was informed by Lauria's secretary that both Morton Yuter, the applicant with the highest test score, and Myles had declined the position although they apparently contend that they had never been offered the job. Myles however, does not allege that any misrepresentations were made to him.

According to the plaintiffs, Morton Yuter, the applicant who had received the highest score on the examination was eliminated from the pool of three after volunteering that he would be unavailable to begin working for three weeks. Although the facts are disputed, the plaintiffs assert that Yuter was never informed that time was of the essence with respect to the job. Rather, the defendants were looking for an excuse to disregard his application and consider John Meehan, the fourth highest scorer for the position. The plaintiffs further contend that Meehan was then bribed to decline the offer so that the defendants could consider Gary Parisi, the fifth highest scorer and a Republican Committeeman who already occupied the position of Assistant to the Commissioner of Purchasing, in a provisional capacity.

On September 9, 1987, the plaintiffs each received a letter informing them that they were not selected for the job. Although the Committee defendants used September 15, 1987 as the operative date, the Court will use September 9, 1987 to facilitate its analysis.

The plaintiffs filed their complaint on May 26, 1993 alleging that they were denied employment in violation of their First Amendment rights to free association, the RICO statute and related state law.

On January 26, 1996, the defendants filed two motions for summary judgment claiming that the plaintiffs' federal claims were time barred and that the pendent state law claims should be dismissed for lack of subject matter jurisdiction pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

As stated above, in a decision dated February 5, 1996, this Court granted the defendants' motions for summary judgment with respect to the plaintiffs' constitutional and RICO claims but retained jurisdiction over the state law claims because this case is on the eve of trial and because of the Court's concern with respect to the state law claims being untimely if they were refiled in state court.

In finding the plaintiffs' federal causes of action time barred this Court held that their claims accrued on September 9, 1987, the date the plaintiffs were informed of the adverse employment decision, namely the decision denying them the job as Assistant to the

Commissioner of Purchasing. Because section 1983 claims have a three year statute of limitations, *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994), and RICO claims have a four year statute of limitations, *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987), the complaint, which was filed on May 26, 1993, over five years later, was untimely.

In addition this Court held that the doctrines of equitable tolling and fraudulent concealment did not apply. These doctrines toll the statute of limitations until a plaintiff discovers, or with the exercise of reasonable diligence should have discovered, the underlying cause of action. However, to "take advantage of the equitable tolling doctrine based on fraudulent concealment, 'a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong *which precluded his possible discovery of the harms that he suffered.'"* *Eisert* at * 6, citing, *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1157 (2d Cir.1995) (emphasis in original). Applying these standards the Court held that the plaintiffs should have known of their injury on September 9, 1987, the date they were denied the job. Moreover, since there was no evidence of the plaintiffs attempting to discover the infringement of their rights, the relevant statutes of limitations were not tolled. Accordingly, the plaintiffs' claims pursuant to section 1983 and RICO were time barred and the defendants' motions for summary judgment were granted.

## II. *The plaintiffs' Rule 59 motion*

As stated above the plaintiffs move to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). However, no final judgment was entered. Accordingly, the plaintiffs' motion is properly referred to as a motion for reconsideration pursuant to Local Rule 3(j) of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York. Local Rule 3(j) provides as follows:

A notice of motion for reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion ... There shall be served with the notice of motion a memorandum setting forth concisely *the matters or controlling decisions which counsel believes the court has overlooked.* No oral argument shall be heard unless the court grants the motion and specifically directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court. (emphasis added)

The standard for granting a motion for reargument is strict "in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Ruiz v. Commissioner of the D.O.T. of City of New York,* 687 F.Supp. 888, 890 (S.D.N.Y. 1988), *aff'd,* 858 F.2d 898 (2d Cir.1988). Granting such a motion means that a court must find that it overlooked "matters or controlling decisions" which, if it had considered such issues, "would have mandated a different result." *H. Sand & Co., Inc. v. Airtemp Corp.,* 743 F.Supp. 279, 280 (S.D.N.Y.1990), *aff'd in part and rev'd in part,* 934 F.2d 450 (2d Cir.1991), citing *Durant v. Traditional Investments, Ltd.,* 1990 WL 269854 (S.D.N.Y. April 25, 1990).

The defendants oppose the motion arguing that the plaintiffs do not contend that the Court overlooked "matters or controlling decisions," which would have mandated a different result. Rather, they assert that the plaintiff contends that the Court misinterpreted the case law regarding accrual of claims and the application of the doctrines of fraudulent concealment and equitable tolling. In addition, the defendants have also raised an issue as to whether this motion was timely filed. Nevertheless, since timeliness is not a jurisdictional requirement, and the Court believes that there was only a delay of one day, and because the Court believes that reconsideration is appropriate for the reasons stated below, the Court will now address the plaintiffs' motions on the merits.

Eisert and Myles raise two separate arguments in their motion for reconsideration: (1) that the Court misapplied decisions in the area of employment law to determine the date the plaintiffs' causes of action accrued; and (2) that the Court should have applied the doctrines of equitable tolling and fraudu-

lent concealment to prevent the statute of limitations from running. The Court will address each of these arguments in turn.

### A. *The date of accrual*

█ Initially, Eisert and Myles contend that the Court incorrectly applied employment discrimination decisions to determine the date that their claims accrued. As a result, the Court wrongly applied the date of the adverse employment decision, *see Eisert* at * 5, rather than the date from which the plaintiffs knew or should have known of their injury to bar their claims.

The plaintiffs misinterpret the Court's earlier decision because these standards are not mutually exclusive. In its February 5, 1996 decision, the Court recognized that the date of accrual is the date "the plaintiff knows or has reason to know of the injury underlying the action." *Eisert* at * 5, citing, *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Further, the Court noted that in the employment discrimination context, the cause of action accrues when the employee receives notice of his termination. *Id.,* citing, *Smith v. United Parcel Serv.,* 65 F.3d 266, 268 (2d Cir.1995) (citing cases). The Court then rejected the plaintiffs' position that this should not be treated as an employment discrimination case and held that their claims accrued on September 9, 1987, the date they were notified of their adverse employment decision, namely that they were not hired.

Of critical significance is the Court's analysis of *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981).

In *Ricks,* the Supreme Court, reviewing a national origin discrimination case brought pursuant to Title VII and 42 U.S.C. § 1981, held that the plaintiff's cause of action accrued when he received notice that he was denied tenure as opposed to when his employment terminated. In *Chardon,* a section 1983 case based on First Amendment political association rights, the Supreme Court applied the *Ricks* standard and held that the cause of

action accrued when the plaintiffs received notice of the adverse employment decision. Reading these two cases together, the Court finds that the Supreme Court has already determined that it would apply the same accrual standards in employment cases rooted in either federal anti-discrimination statutes or the Constitution.

*Eisert* at * 5.

This analysis demonstrates that the standard applied by the Supreme Court in employment cases, the date of the adverse employment decision, is synonymous with the date that the plaintiff knew or should have known of his injury as required in section 1983 cases. Accordingly, the Court grants the plaintiffs' motion for reconsideration with respect to the date that their causes of action accrued, and upon reconsideration, adheres to its earlier decision.

The plaintiffs attempt to distinguish their case from the *Ricks* and *Chardon* reasoning in that this is not an employment case because they were never actually employed. The Court declines to recognize this distinction as the plaintiffs cite no case law in support of their position and merely disregard the only case in this jurisdiction supporting the Court's earlier decision as wrongly decided. *See Rodriguez v. Village of Island Park,* 1991 WL 128568, *7 (E.D.N.Y.1991), citing, *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 24 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (rejecting the plaintiffs' claims in a lawsuit brought pursuant to 42 U.S.C. §§ 1981–1983 and RICO that their cause of action did not accrue until they realized that an adverse housing decision was discriminatory as a result of a newspaper article).

Parenthetically, the Court notes that even if it believed that this case was distinguishable from *Chardon* and *Rodriguez,* it would still find that the plaintiffs knew or should have reasonably known of their injuries on September 9, 1987. Eisert admits that during her interview she was asked about her political affiliation. She was then denied the job in favor of a Republican Committeeman who already held the position in a provisional

capacity. The Court finds, that these events were sufficient to alert the plaintiffs to their injuries or possible damages. As a result, their causes of action accrued on September 9, 1987, even if this case was not treated as one for employment discrimination.

### B. *Fraudulent concealment and equitable tolling*

The plaintiffs' second argument is that the Court improperly declined to apply the doctrines of equitable tolling and fraudulent concealment to toll the statute of limitations. As stated above, these doctrines toll the statute of limitations until the plaintiff discovers, or with the exercise of reasonable diligence should have discovered, the underlying cause of action. However, to "take advantage of the equitable tolling doctrine based on fraudulent concealment, 'a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong *which precluded his possible discovery of the harms that he suffered.*'" *Eisert* at * 6, citing, *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir.1995) (emphasis in original). Applying these standards the Court held that the relevant statutes of limitations were not tolled in this case.

The plaintiffs' now move the Court to reconsider this holding on two grounds. First, Eisert contends that she did take the necessary affirmative action when she called Lauria's office to find out whether she had been awarded the job. During a conversation with Lauria's secretary, Eisert was advised that the first and second highest scorers had declined offers and as a result, Parisi, the fifth highest scorer was appointed. Eisert alleges that this statement was a misrepresentation of fact because neither Yuter nor Myles was ever offered the job, and that she relied upon this misrepresentation because she was lulled into believing that her rights had not been violated. As a result, she did not bring her lawsuit until five years after these events occurred. Therefore, the statutes of limitations should have been tolled with respect to her claims. Upon reconsideration, the Court agrees.

As the Second Circuit recognized in *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988), over a century ago, the Supreme Court stated that the purpose of the fraudulent concealment doctrine is to prevent defendants from concealing a fraud, or committing a fraud in a manner such that the fraud concealed itself, until such time as the party committing the fraud could plead the statute of limitations as an affirmative defense. *Id.* at 1083, citing, *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874). The essence of the doctrines are that the statute of limitations does not run against a plaintiff who is unaware of her cause of action where her employer's, or in this case potential employer's, misleading conduct is responsible for the employee's unawareness of her claims. *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir.1986) (addressing the doctrine of equitable tolling).

In recognition of these policies underlying the doctrines of fraudulent concealment and equitable tolling, the Court now vacates its earlier decision in this regard with respect to Eisert. As stated above, Eisert alleges that when she called to inquire about the status of her application, Lauria's secretary misrepresented that Parisi was hired only after Yuter and Myles declined offers consistent with the rule of three under Civil Service Law § 61. As a result, Eisert was led to believe that the hiring of Parisi was lawful. It was not until much later that Eisert discovered that Yuter and Myles were never offered the position, and that her rights were abridged. Upon reconsideration of these allegations, the Court finds that these allegations are sufficient to toll the statutes of limitations with respect to Eisert's claims, at least sufficient to present the facts to the jury.

In reaching this conclusion, the Court recognizes that Eisert has admitted that she was questioned regarding her political affiliation during her interview for the job, and that Lauria originally offered her the job but than later changed his mind without explanation. However, upon reconsideration, the Court finds that these admissions are better applied to the factual issue and Eisert's credibility with respect to her knowledge and her claims rather than to preclude her from as-

serting those claims altogether as a matter of law.

Second, both Eisert and Myles move the Court to reconsider arguing that the Court misapplied the rule of *Pinaud* set forth above, and requiring an affirmative showing that "the plaintiffs actually attempted to discover the alleged wrongdoing, and that their efforts were somehow thwarted by the defendants' fraudulent conduct." *Eisert* at * 6. The plaintiffs dispute this standard because it fails to account for situations in which the plaintiffs are completely unaware of any wrongdoing. In support of their position, the plaintiffs cite *Rodriguez*, a decision they believe was "wrongly decided," in which the district court stated that the doctrine of fraudulent concealment requires a showing:

> (1) that defendants concealed the existence of the cause of action from the plaintiff, (2) that plaintiff remained in ignorance until ... three years (§§ 1981–1983), or four years (RICO) prior to the filing of the complaint, and (3) that plaintiff's ignorance was not attributable to a lack of diligence on the plaintiff's part.

*Rodriguez*, at *9. The *Rodriguez* court further elaborated on this standard by explaining that certain wrongful acts may be committed in such a manner as to conceal them or may by their nature be self concealing. *Id.* While the Court agrees with the standards regarding "self concealing" acts, the Court did not address them in its earlier decision because they are inapplicable in this case.

As stated above, Eisert admits that during her interview her political affiliation was questioned. Subsequently, the position at issue was given to a Republican Committeeman who already held the job in a provisional capacity. Moreover, the plaintiff admits that Lauria originally offered her the position but then changed his mind without explanation. These facts are sufficient to support a finding that the alleged constitutional violations were not self concealing in nature. Accordingly, Eisert's motion for reconsideration of the Court's earlier decision on this ground is denied.

■ Unlike Eisert, no affirmative misrepresentations were made to Myles. In addi-

tion, the Court concludes that the events at issue are insufficient to invoke the doctrine of fraudulent concealment with respect to his claims. As the Myles supporting affidavit and deposition testimony indicate, he was not selected for the job and he knew that Parisi was. He made no effort to find out why. He then filed a lawsuit over five years later based on a newspaper article he read. If the Court applied the doctrines of fraudulent concealment and equitable tolling to his claims, the door would be opened to litigation based on stale claims turning on plaintiffs' willful ignorance. The Court is unwilling to start a descent down that slippery slope. Accordingly, the plaintiffs' motion for reconsideration on this ground is denied with respect to Myles and all of his claims remain time barred except his claim for fraud.

As a result of these decisions, the Court will refer to the remaining claims, with the exception of the fraud claim, as belonging only to Eisert.

### III. *The substantive claims*

The Court's decision to vacate its earlier decision with regard to Eisert's claims does not end the inquiry. Having made this determination, the Court must now consider the defendants' previous substantive arguments made in their original motions for summary judgment, but not previously addressed. Each cause of action will be addressed separately.

### A. *The summary judgment standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing

the motion. *See Institute for Shipboard Education v. Cigna Worldwide Ins. Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir. 1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed. R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *United States v. Rem,* 38 F.3d 634 (2d Cir.1994).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994); *Eye Assocs. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

### B. *First Amendment political association*

Eisert contends that her First Amendment rights to political association were violated by the defendants as a result of the political patronage and manipulation of civil service which resulted in the appointment of Gary Parisi to the position of Assistant to the Commissioner of Purchasing instead of her. The defendants contend that this claim should be dismissed for two reasons. First, "[s]ince all the ... plaintiffs' are registered Republicans, plaintiffs are unable to contend that the Town discriminated against them due to their non-affiliation with or lack of support for the 'in-power' political party." Second, the existence of legitimate non political reasons justifying the decision to hire Parisi are sufficient to preclude Eisert's claims. The Court rejects both of these contentions in turn.

### 1. *The party registration contention*

■ The defendants rely on *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) for the proposition that because all parties involved in this lawsuit are registered Republicans, there can be no First Amendment violation. The defendants misread *Rutan.*

In *Rutan,* the Supreme Court expanded upon its earlier decisions in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), to conclude that "[u]nder ... sustained precedent, conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." *Rutan,* 497 U.S. at 78, 110 S.Ct. at 2739. There is nothing in the Court's holding that implies that the relevant inquiry is limited only to party registration. Indeed the Court need look no further than the *Rutan* decision itself to reject the defendants' contentions in that regard. In that case, the Supreme Court, in reaching its decision, considered not only the plaintiffs' registration, but also "whether the applicant voted in Republican primaries in past election years, whether the applicant has provided financial or other support to the Republican Party and its candi-

dates, whether the applicant has promised to join and work for the Republican Party in the future, and whether the applicant has the support of Republican Party officials at state or local levels." *Id.* at 66, 110 S.Ct. at 2732. As a result, the Court finds that the First Amendment protects applicants not only for positions in their opposing parties' administrations, but also those who suffer adverse employment decisions because, while they may be a member of the party in power, they lack political clout, or are at odds with someone in a position of authority.

In this case, Eisert has implicated similar interests. She contends that, although she may have been a registered Republican, she was denied civil service employment because someone with lesser qualifications was unlawfully given the job based on his political ties, namely his position as a Republican Committeeman, and his role in local politics. Consistent with the rules set forth above, the Court finds that these allegations create an issue of fact as to whether Eisert's first amendment rights were abridged and denies the defendants' motions for summary judgment on this cause of action.

### 2. *Non political reasons for selecting Parisi*

The defendants' second argument is that Eisert's claims should be dismissed because there were adequate non political reasons for the decision to hire Parisi. In support of this position, the defendants cite *Dusanenko v. Maloney,* 726 F.2d 82 (2d Cir.1984). However, *Dusanenko* does not stand for the proposition cited. In *Dusanenko,* the Second Circuit merely held that where the defendants move for summary judgment and file Rule 3(g) statements pursuant to the Local Rule 3(g) of the Joint Rules for United States District Courts for the Southern and Eastern Districts of New York, and the plaintiffs do not file opposing 3(g) statements or offer any other contradictory evidence in the form of affidavits, the district courts are free to take the allegations contained in the defendants' 3(g) statement as true when ruling on a motion for summary judgment.

The defendants also cite *DeCintio v. Westchester County Med. Ctr.,* 807 F.2d 304, 308 (2d Cir.1986), *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987) for the proposition that a finding of discrimination cannot be grounded on an employment decision based on friendship, as the defendants apparently contend was the basis for Lauria's decision to hire Parisi. However, *DeCintio* involved Title VII and Equal Pay Act claims where the Court rejected discrimination claims based on the allegation that a woman was hired because her boy friend was in charge of the appointment. In this case, Eisert contends that she was not hired because of political patronage and unlawful manipulation of the civil service laws, not because of some personal relationship between Lauria and Parisi. Accordingly, the argument in this regard raises a question of triable fact sufficient to defeat summary judgment.

### C. *The RICO claims*

The defendants further move for summary judgment on the plaintiffs RICO claims. As a preliminary matter, the Court notes that the Town defendants and the Committee defendants present different arguments in support of their respective motions.

### 1. *The Town defendants*

In their original motion papers, the plaintiffs agreed to withdraw the RICO claims against the Town defendants based on this Court's earlier holdings in *Nu–Life Constr. Corp. v. Board of Educ.,* 779 F.Supp. 248, 251 (E.D.N.Y.1991) and *Rini v. Zwirn,* 886 F.Supp. 270, 294 (E.D.N.Y.1995) (recognizing that a municipality can not be held liable under the Civil RICO statute because the required intent cannot be imputed from the municipal agents to the municipality). Accordingly, this issue requires no further discussion.

### 2. *The Committee defendants*

The Committee defendants contend that they are entitled to summary judgment on the plaintiff's RICO claims because Eisert has failed to allege sufficient facts to support her contentions. The threshold pleading requirements of a private action under § 1962 of RICO were set forth in *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* 465 U.S.

1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), as follows:

> To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as 'criminal RICO.' In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.... Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden—*i.e.,* invoking RICO's civil remedies of treble damages, attorneys fees and costs.... To satisfy this latter burden, plaintiff must allege that he was 'injured in his business or property *by reason of* a violation of section 1962' (*id.* at p. 17. [citations omitted] ).

■ The Committee defendants contend that the plaintiff is unable to establish the required elements necessary to prove a civil RICO claim. Specifically, the Committee defendants argue that Eisert is unable to demonstrate two or more predicate acts which constitute a pattern of racketeering activity or the existence of a RICO enterprise.

### (i) *A pattern of racketeering activity*

A "pattern of racketeering" is at least two acts of "racketeering activity, occurring within 10 years of each other." 18 U.S.C. § 1961(5). Although "[p]roof of at least two acts of racketeering is necessary," without more, such proof "is not sufficient ... under RICO." *United States v. Alkins,* 925 F.2d 541 (2d Cir.1991).

In *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court followed its famous footnote 14 in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), and held that in order to constitute a "pattern" under the statute, the "racketeering activity" must be "related" and have some sort of "continuity." *Id.* 492 U.S. at 238–39, 109 S.Ct. at 2900; *see also United States v. Alkins, supra,* at 553 ("the law of this circuit is that the acts that constitute the pattern of racketeering activity must be related and continuous or pose the threat of continuity").

### A. *Racketeering Activity*

Racketeering activity is defined under RICO to include bribery as defined under state law, *see* 18 U.S.C. 1961(1)(A) and mail fraud. *See* 18 U.S.C. § 1961(1)(B). According to New York Penal Law §§ 200.45 and 200.50 it is unlawful to give a bribe for public office or for a public officer to receive a bribe.

With respect to mail fraud, the Second Circuit has required that:

> a defendant must have used the mail as a means to obtain 'money or property by means of false or fraudulent pretenses, representations, or promises' or for purposes of executing a scheme to defraud. A showing of intentional fraud, *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49 (2d Cir.1987), *cert. denied,* 484 U.S. 1005 [108 S.Ct. 698, 98 L.Ed.2d 650] (1988), or 'reckless indifference to the truth' is necessary to satisfy 'the requisite knowledge and criminal intent' element of mail fraud. *United States v. Sheiner,* 273 F.Supp. 977, 983 (S.D.N.Y.1967), *aff'd,* 410 F.2d 337 (2d Cir.), *cert. denied,* 396 U.S. 825 [90 S.Ct. 68, 24 L.Ed.2d 76] (1969). Acts done inadvertently, mistakenly, or in good faith without an intent to defraud do not satisfy the requirements of the statute (citation omitted) *O'Malley v. New York City Transit Authority,* 896 F.2d 704 (2d Cir.1990).

■ The elements of mail fraud are (1) a scheme to defraud and (2) use of the mails to further that scheme. *See McLaughlin v. Anderson,* 962 F.2d 187, 190–91 (2d Cir. 1992); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 997 (E.D.N.Y.1995), citing, *United States v. Lemire,* 720 F.2d 1327, 1334–35 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

 Allegations of mail fraud must be made with the particularity required by Fed. R.Civ.P. 9(b). Rule 9(b) requires that "all averments of fraud ... shall be stated with particularity [while] [m]alice, intent, knowledge, and other condition of mind ... may be averred generally." Pursuant to this higher pleading standard, the plaintiff must adequately specify the statements the claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin,* 962 F.2d at 191; *see also Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Specifically, the plaintiff "must set forth the contents of the [misrepresentations] and specify how each of the items was false and misleading." *Official Publications, Inc. v. Kable News Co., Inc.,* 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part, rev'd in part,* 884 F.2d 664 (2d Cir.1989).

Applying these standards, the Court finds that the plaintiffs have stated sufficient predicate acts to support a civil RICO claim. First, the plaintiffs allege that the defendants bribed John Meehan so that he would decline the position as Assistant to Commissioner of Purchasing, and Parisi could be considered. Second, the plaintiff alleges in her memorandum of law that the following three letters were sent through the mails in furtherance of the fraudulent scheme:

1. Letter dated July 1, 1987 from Sidney Rosenthal, the Executive Director of the defendant Civil Service Commission informing Eisert that she was qualified for the position of Assistant to the Commissioner of Purchasing;

2. Letter dated August 18, 1987 from William F. Sammon, Jr., Director of Personnel of the defendants Town of Hempstead, and Republican Executive Leader for the Village of Hempstead informing Eisert that she was scheduled for an interview for the position; and

3. Letter dated September 9, 1987 from Sammon, informing Myles that he had been rejected for the position.

These acts when taken together constitute multiple predicate acts sufficient to satisfy RICO.

**B.** *The Continuity Requirement*

 The defendants also contend that the plaintiff fails to allege a "pattern" of racketeering sufficient to survive a summary judgment motion. In order to demonstrate a pattern of racketeering under 18 U.S.C. § 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). "Continuity is both a closed- and open-ended concept, referring to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902; *see also GICC Capital Corp. v. Technology Finance Group,* 67 F.3d 463 (2d Cir.1995) (discussing the difference between open ended and closed ended continuity). Closed-ended continuity requires demonstration of a series of related predicate acts over a substantial period of time. *GICC,* 67 F.3d at 466, quoting, *H.J. Inc.,* 492 U.S. at 241–42, 109 S.Ct. at 2902. When determining the threat of continuity, the courts are not limited to the plaintiff's future damages, but may consider potential harm to others as well. *See id.,* citing, *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521 (2d Cir.1994).

The Second Circuit has recently elaborated on this standard stating that:

in cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts have generally found no threat of continuing criminal ac-

tivity arising from conduct that extended over even longer periods.

*United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir.1995); *Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 998 (E.D.N.Y. 1995).

Further elaborating on this important distinction, the Second Circuit noted that where three murders were committed over a nine month period, a discussion of continuity was not even necessary because the acts by their very nature threatened repetition satisfying the continuity prong of RICO. *Aulicino*, 44 F.3d at 1111–12, discussing, *United States v. Simmons*, 923 F.2d 934 (2d Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991). Conversely, the *Aulicino* court also recognized that where the sale of an 80% interest in a business was involved, "rather than any inherently unlawful goal," a trial court's instructions that a few weeks or months might constitute a substantial period of time was erroneous. *Aulicino*, 44 F.3d at 1112, discussing, *Metromedia Co. v. Fugazy*, 983 F.2d 350, 368–69 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993) (upholding a RICO verdict because the predicate acts did not span weeks or months but rather years and the erroneous instruction was harmless).

Applying the standards espoused in *Aulicino*, Eisert is unable to establish a closed-ended continuity by alleging the bribery and mail fraud discussed above. To establish such continuity, the plaintiff must demonstrate that the conduct complained of occurred over an extended period of time. *GICC*, 67 F.3d at 466–67. Although one could argue that political patronage is inherently unlawful under *Aulicino*, the Court finds that the three month period during which the bribery and mail fraud took place is of insufficient duration to support a finding of closed-ended continuity.

 However, Eisert may also establish her RICO claim by pleading open-ended continuity. As discussed above, open-ended continuity may be maintained by alleging past conduct with a threat of repetition in the future. *GICC*, 67 F.3d at 465–66. "Where the nature of the conduct ... does not by itself suggest that the racketeering acts will

continue, courts must look to other external factors." *Id., quoting, United States v. Kaplan*, 886 F.2d 536, 542–43 (2d Cir.1989). Applying this reasoning, the Second Circuit has found that allegations that defendants "engaged in a one-time mailing of 8,000 copies of fraudulent documents in connection with a condominium conversion plan sufficient to plead a pattern of racketeering activity where there was a basis to infer similar mailings would occur in the future." *Id.* at 466, *citing, Beauford v. Helmsley*, 865 F.2d 1386, 1392 (2d Cir.1989); *see also Azrielli*, 21 F.3d at 521 (holding that fraudulent security sales lasting for at least one year was sufficient to allow a jury to find a RICO "pattern of activity" where the sales were accompanied by future attempts to sell the securities).

Applying the standards for analyzing a claim of open-ended continuity, the Court again finds the plaintiff's claims to be deficient. The only additional allegations raised in the plaintiff's motion papers regarding open-ended continuity are:

1. The "one-percent" kickback scheme found unlawful in *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir.1987) and *Jund v. Town of Hempstead*, 941 F.2d 1271 (2d Cir.1991);

2. The wrongful denial of one Robert J. Summerville to an appointment to the position of Licensing Inspector; and

3. The wrongful denial of additional civil service jobs to Eisert.

While these additional allegations may have some surface appeal, they are insufficient to resurrect an otherwise deficient cause of action. Eisert has made no attempt to connect the issues in the *Cullen* and *Jund* decisions to the case at hand. Accordingly, the Court will not consider the unrelated acts in those cases.

According to his affidavit, Robert Summerville has challenged his alleged wrongful denial of employment with the New York State Division of Human Rights on the basis of race discrimination. He does not claim that his First Amendment political association rights were abridged. Accordingly, his allegations are also irrelevant.

Finally, although Eisert alleged that she has been denied other civil service jobs, she has not alleged any facts to demonstrate that she was denied these jobs in violation of her constitutional, statutory or common law rights. Further, there is no evidence that such denials were in any way related to the transactions at issue in this case. Accordingly, the plaintiff is unable to establish open-ended continuity or a threat of repetition in support of her RICO claims and the Committee defendants' motion for summary judgment with respect to the RICO claims is granted.

#### (ii) RICO Enterprise

Because the Court has already granted the Committee defendants' motion for summary judgment with respect to the RICO claims for failure to establish a pattern of racketeering activity, the Court need not address the existence of a RICO enterprise.

### D. The New York Executive Law and Civil Rights Law claims

Eisert also alleges claims pursuant to New York Executive Law § 290 et seq, and New York Civil Rights Law § 40–c(2). However, these statutes protect individuals against discrimination on the basis of "age, race, creed, color, national origin, sex, disability, or marital status." See N.Y.Exec. Law § 296(1); N.Y.Civ.Rts.Law § 40–c(2). The plaintiffs have offered no case law or reasoning that would extend these statutes to cover political association. Accordingly, the defendants' motion for summary judgment with respect to these claims is granted and those claims are dismissed.

### E. Negligence

The plaintiff also alleges a cause of action for negligence. To establish a claim for negligence, the plaintiff must establish a duty, a breach of that duty, that the alleged breach of duty was proximately caused her injury, and that damages resulted. Hassanein v. Avianca Airlines, 872 F.Supp. 1183 (E.D.N.Y.1995). Eisert has not established a breach of duty or that she was injured as a result. The plaintiff's claims solely concern intentional conduct. The Court cannot contemplate how the acts alleged in the complaint could have been based upon "careless" conduct. Therefore, the negligence cause of action is insufficient as a matter of law. Accordingly, the defendants' motions for summary judgment with respect to the plaintiff's negligence claim are granted and that claim is dismissed.

### F. Fraud

The defendants also move for summary judgment with respect to the plaintiff's fraud claims. As a preliminary matter, the Court recognizes that this is the only remaining viable cause of action for Myles.

To prevail on a common law fraud claim, the plaintiffs must establish that (1) there was a material, false representation, (2) made with knowledge of its falsity, (3) and intent to defraud, (4) which the plaintiff reasonably relied upon, and (5) damages occurring thereby. Kregos v. Associated Press, 3 F.3d 656 (2d Cir.1993), cert. denied, — U.S. —, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). The defendants contend that the plaintiffs are unable to satisfy these elements as a matter of law. In particular, the defendants contend that Eisert is unable to establish a misrepresentation of fact or that there was any reasonable reliance.

#### 1. Misrepresentations of fact

The defendants contend that Eisert is unable to establish any misrepresentation of fact. In support of this contention, the defendants assert that the only representations the defendants allegedly made were that the plaintiffs were not given the job, which is not a misrepresentation of fact. The Court disagrees.

"[A] misrepresentation may be the product of the intentional suppression of the truth, ... and may be effected by words, conduct or the exhibition of documents." Lukowsky v. Shalit, 110 A.D.2d 563, 487 N.Y.S.2d 781, 785 (1st Dep't 1985) (internal citations omitted). The plaintiffs contend that with respect to Eisert, Lauria stated, through his secretary, that Yuter and Myles declined the position as Assistant to the Commissioner of Purchasing so that Gary

Parisi could ultimately be hired. However, in reality, neither Myles nor Yuter had been offered the job. Moreover, both plaintiffs were given the impression during their interviews that the selection process would be conducted fairly and properly when instead, the defendants unlawfully manipulated the hiring process to meet their own ends. The Court finds that these allegations, when taken together, are sufficient to create a question of fact with respect to whether a misrepresentation of fact was actually made, and the defendants summary judgment motion on this ground is denied.

### 2. *Reasonable reliance*

 The defendants further contend that the plaintiffs are unable to demonstrate that they relied in any way on the alleged misrepresentations. In support of their position, the defendants contend that the "[p]laintiff[ ] ha[s] failed to produce a scintilla of evidence raising even the inference that they quit any jobs, turned down other employment opportunities, refrained from interviewing for other jobs or suffered any other tangible injuries in reliance on the purported fraud."

The Court agrees. The alleged misrepresentation is that Lauria's secretary advised Eisert that Yuter and Myles, the first and second highest scorers on the civil service examination declined the position when in reality they were never offered the job. The only legally cognizable effect of such a misrepresentation is that it may constitute fraudulent concealment with regard to the statute of limitations because it prevented Eisert from exercising her rights in a timely fashion. The misrepresentation could not have resulted in any damage in and of itself. As the defendants contend, the plaintiff did not lose any wages, she did not leave another job to take this one and she was not prohibited from seeking other work. Assuming the misrepresentations were never made, Eisert would still be in the same place she was before. Accordingly, the defendants' motion for summary judgment with respect to the plaintiff's fraud claim is granted and that claim is dismissed.

### G. *Tortious interference with prospective business relationship*

 Eisert has also alleged a claim against the Committee defendants for tortious interference with business relations. The tort of interference with prospective business relations applies to those situations where the defendants interfered with the business or economic relations between the plaintiff and a third party (1) with the sole purpose of harming the plaintiff; or (2) by dishonest, unfair or improper means. *Campo v. First Nationwide Bank, FN Projects,* 857 F.Supp. 264, 273 (E.D.N.Y.1994), citing, *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir. 1987); *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 118 (E.D.N.Y.1993).

The Committee defendants contend that they are also entitled to summary judgment on this claim. The Court disagrees. The plaintiff contends that the Committee defendants are liable for tortious interference with prospective business relations because "[t]here is no question that [the] defendant Republican Committees diverted to Mr. Parisi the position in question and exploited that position for their own benefit, along political lines." Pl.Mem. of Law. at 14. Stated simply, Eisert has alleged that the Committee defendants improperly interfered with her opportunity to obtain the position at issue either solely to harm her or by dishonest, unfair or dishonest means. The Court finds that such allegations are sufficient to raise a question of fact regarding the Committee defendants' role, if any, in the denial to Eisert of the position of Assistant to the Commissioner of Purchasing and denies their motion for summary judgment with respect to this cause of action.

### H. *Civil Service Law claims*

 The plaintiff further alleges that the defendants unlawfully manipulated Civil Service Law § 61, in order to appoint Parisi to the position of Assistant to the Commissioner of Purchasing. Section 61(1) provides,

1. **Appointment or promotion from eligible lists.** Appointment or promotion from an eligible list to a position in the

competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion; provided, however, that the state or a municipal commission may provide, by rule, that where it is necessary to break ties among eligibles having the same final examination ratings in order to determine their respective standings on the eligible list, appointment or promotion may be made by the selection of any eligible whose final examination rating is equal to or higher than the final examination rating of the third highest standing eligible willing to accept such appointment or promotion. Appointments and promotions shall be made from the eligible list most nearly appropriate for the position to be filled.

N.Y.Civ.Serv.Law § 61(1).

This provision is commonly referred to as the "rule of three" described above and in the Court's February 5, 1996 decision. According to the rule of three, appointments for a civil service position must be made from the pool of three applicants with the highest scores on the civil service examination, in this case Yuter, Myles and Eisert. If one of the applicants declines the position, he or she will be replaced by the next highest scorer until the appointing officer has a pool of three applicants from which to choose. The plaintiffs contend that the defendants unlawfully manipulated this process by dismissing Yuter from the pool without his declining the job as Assistant to the Commissioner of Purchasing, and by bribing the fourth highest scorer, so that the fifth highest scorer, Gary Parisi could be appointed.

The defendants move for summary judgment on this claim asserting that there is no private cause of action under Civil Service Law § 61. The Court disagrees. According to the New York Court of Appeals, "eligibles on a civil service list from which a position is to be filled, as well as ineligibles, have standing to challenge the compliance with governing constitutional, statutory and regulatory

provisions of the procedures under which the list was produced." *Tibaldi v. Brezenoff,* 65 N.Y.2d 710, 711, 492 N.Y.S.2d 4, 5, 481 N.E.2d 544, 545 (1985).

> Unless those who have sat for, and passed a civil service examination may seek judicial review of unlawful appointments or designations to positions for which they have been placed on an "eligible list", then appointments or designations which may be contrary to law will be effectively insulated from public scrutiny, judicial oversight, and perhaps any review whatsoever. Moreover, restriction on standing is largely of judicial creation, often used to avoid difficult issues or unpleasant results; generally standing should be expanded rather than contracted.

*Burke v. Sugarman,* 35 N.Y.2d 39, 45, 358 N.Y.S.2d 715, 719, 315 N.E.2d 772, 775 (1974) (internal citations omitted). However, in allowing the plaintiff a private right of action, the Court also notes that her remedies under section 61 are quite limited. As the New York Court of Appeals noted in *Andriola v. Ortiz,* 82 N.Y.2d 320, 604 N.Y.S.2d 530, 624 N.E.2d 667 (1993),

> One must conclude ... [that] the [trial c]ourt's direction that the petitioners ... receive retroactive seniority benefits and back pay—in effect thereby mandating their retroactive promotion ...—is fundamentally inconsistent with the letter and the spirit of Civil Service Law § 61, and with our previous[ ] ... holdings that the only remedy a Civil Service examinee in the competitive class is entitled to for defects in the appointive or promotional process such as that presented here is not appointment or promotion, but judicial direction for reconsideration after the prior defect has been corrected.

*Id.* at 325, 604 N.Y.S.2d at 532, 624 N.E.2d at 669. Accordingly, while Eisert is entitled to maintain a private right of action under New York Civil Service Law § 61, she will not be entitled to money damages or injunctive relief beyond a direction that her application for the position of Assistant to the Commissioner of Purchasing be reconsidered.

However, while the Court has now determined that Eisert has a private right of

action, albeit limited, and no right to the monetary damages she seeks, the Court further holds that her cause of action will not be heard by this Court. Civil Service Law § 76(1) provides that:

> Any officer or employee believing himself aggrieved by a penalty or punishment of demotion or dismissal from the service ... imposed pursuant to the provisions of section seventy-five of this chapter, may appeal from such determination either by an application to the state or municipal commission having jurisdiction, or by an application to the court in accordance with the provisions of article seventy-eight to the civil practice law and rules.

Section 75 expressly applies to employees who hold certain civil service positions, a category inapplicable to the plaintiff, as an applicant. However, the Court's inquiry does not end with a review of the statute. The relevant case law demonstrates that the article 78 proceedings applicable under civil service law § 76(1) apply not only to discharge and discipline cases, but to hiring cases as well. *See Bell v. Nassau County Civil Service Comm'n*, 203 A.D.2d 285, 609 N.Y.S.2d 669 (2d Dep't 1994) (challenge to determination of civil service commission not to appoint petitioners was brought by article 78); *Reiser v. State*, 198 Misc. 647, 98 N.Y.S.2d 705, 707 (Ct.Cl.1950) ("It is well established that the proper remedy for a person who has been wrongfully excluded from [a civil service position] is a proceeding against a body or officer, under Article 78...."); *see also* 19 N.Y.Jur.2d *Civil Servants* § 396 (article 78 "[r]eview ... is the proper remedy in many matters in connection with civil service ... includ[ing] ... the appointment to positions").

Accordingly, although neither party has expressly addressed this issue, the Court finds that a claim for violation of Civil Service Law § 61 should be brought by article 78 proceeding in the New York Supreme Court. *See* N.Y.Civ.Prac.Law & Rules § 7804(b), Practice Commentary C7804:2. While there are multiple complex jurisdictional issues that may be implicated as to whether this Court has the jurisdiction to hold its own article 78 proceeding regarding the alleged violations of civil service law, the Court declines to engage in such an analysis. Rather, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise jurisdiction over this cause of action and dismisses Eisert's civil service law claim without prejudice to be refiled in state court as an article 78 proceeding consistent with New York Civil Service Law and New York policy favoring such proceedings in these types of suits.

### I. *The Committee Defendants' association claim*

In addition to the contentions discussed above, the Committee defendants assert one additional argument. The Committee defendants, which are unincorporated associations, contend that the plaintiff's claims against them must be dismissed because the unlawful activity alleged was not ratified or authorized by the Committee membership. The Court disagrees.

As the Second Circuit recognized in *Jund v. Town of Hempstead*, 941 F.2d 1271, 1278 n. 1 (2d Cir.1991), "New York law maintains that an unincorporated association has no existence independent of its members, all liability is that of each member individually," citing *Martin v. Curran*, 303 N.Y. 276, 101 N.E.2d 683, 684–85 (1951). However, while unincorporated associations, such as the Committee defendants, are not generally liable for the unauthorized acts of their members, they may be bound by the actions of their agents. *Id.* at 1280, citing, *American Bridge Div., U.S. Steel Corp. v. International Union of Operating Eng'rs, Local 487*, 772 F.2d 1547, 1551 (11th Cir.1985). "The agents' actions need not be within their actual authority to find the [unincorporated association] liable, but must be within the scope of their general apparent authority and be done on behalf of the [association]." *Id.* (internal quotations omitted). Adopting this "theory of liability ... encourage[s] unincorporated associations to police their ... actions, an obligation of particular import in ... case[s such as this] involving political patronage and its role in employment determinations." *Id.* The issue of whether the persons involved in this case acting under the general apparent authority of an unincorpo-

rated association is a question of fact for the jury. *Id.*

Applying these standards the Court finds that the Committee defendants' liability as unincorporated associations may be based on the general apparent authority of its agents. The plaintiffs contend that Lauria, as an agent of the Committee defendants, used his general apparent authority to unlawfully manipulate the civil service law to deny her the position of Assistant to the Commissioner of Purchasing for the Town of Hempstead. As the *Jund* court noted, these allegations are sufficient to create a question of fact regarding the Committee defendants' liability. Accordingly, the Committee defendants' motion for summary judgment based on their status as unincorporated associations pursuant to *Martin, supra,* is denied.

At oral argument the Committee defendants attempted to distinguish *Jund* stating that in that case, the standards applied by the Second Circuit differ from that applied by the New York courts in *Martin* and its progeny. Again, the Court disagrees. *Jund* was decided based on New York law and cites *Martin* in its analysis. Accordingly, this Court is bound by *Jund* and Committee defendants' motion for summary judgment with respect to the plaintiff's state and federal claims based on lack of ratification is denied.

*Conclusion*

After reviewing the parties' submissions, and after hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the plaintiffs' motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) is granted with respect to the plaintiff Eisert and denied with respect to the plaintiff Myles; and it is further

ORDERED, that upon reconsideration, the defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56 are granted with respect to the claims brought pursuant to RICO, 18 U.S.C. §§ 1961–68, New York Executive Law § 290 *et seq.,* New York Civil Rights Law § 40–c(2), and the common law causes of action of negligence and fraud; it is further

ORDERED, that Eisert's claim pursuant to New York Civil Service Law § 61 is dismissed without prejudice to be refiled in the New York State Supreme Court; it further

ORDERED, that the defendants' motions for summary judgment pursuant to Fed. R.Civ.P. 56 are denied with respect to the plaintiff Eisert's First Amendment claims pursuant to 42 U.S.C. § 1983 and her common law claims for tortious interference with business relations against the Committee defendants is denied; and it is further

ORDERED, that the caption of this case be amended to reflect that the claims of the plaintiff Thomas Myles have been dismissed from this case.

SO ORDERED.