Brett K. LURIE, Petitioner,

v.

Bonnie G. WITTNER, Acting Justice of the Supreme Court of the State of New York; Dennis C. Vacco, Attorney General of the State of New York; Glenn S. Goord, Commissioner, New York State Department of Correctional Services, Respondents.

No. 98 CIV. 7697(SAS).

United States District Court, S.D. New York.

July 2, 1999.

Mark M. Baker, Brafman, Gilbert & Ross, P.C., New York City, for Petitioner.

Christine Duisin, Assistant Attorney General for the State of New York, New York City, for Respondents.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Brett K. Lurie ("Lurie" or "petitioner") has moved for reconsideration of that portion of the Opinion and Order dated April 26, 1999 ("Opinion and Order") denying *habeas* relief as to Count 28. Respondents have cross-moved for reconsideration of the entire Opinion and Order. On April 30, 1999, I withdrew the Opinion and Order pending the outcome of these motions. For the following reasons, I deny both motions and now re-instate the April 26, 1999 Opinion and Order.

### Background

Petitioner was convicted, in Count 28, of violating section 175.35 of the New York Penal Law by filing a false instrument on November 1 to 3, 1989, to wit, the fourth amendment to the offering plan for the premises at 488 Ocean Parkway (the "Edgewood"). Section 175.35 reads as follows:

A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public corporation.

N.Y. Penal Law § 175.35. Petitioner's false statement, in part, is found at the end of the fourth amendment to the Offering Plan, which states: "Except as set forth in this Fourth Amendment and the first three amendments to the plan, there have been no material changes in this plan." *See* pp. 119–120, *infra,* for a discussion of materiality. In fact, at the time this amendment was filed, petitioner was in substantial arrears on both the mortgage and maintenance payments.[2] *See* Letter dated May 19, 1999 from Mark M. Baker, Esq., counsel for petitioner ("May 19th letter"), Exh. F, pp. 2285 & 2287. *See also id.,* Exh. D, p. 5 (for comparable language used in the fifth amendment to the Edgewood plan).

### *Petitioner's Motion for Reconsideration*

Petitioner argues that Count 28 should be overturned on the ground that the precluded testimony of Richard Koral, his real estate attorney, would have negated a finding of fraudulent intent. He supports this conclusion by citing to certain changes made to the applicable New York City Regulations which were not disclosed and did not take effect until after November 3, 1989.[3] As a result of these changes, amendments must now disclose:

(vi) A statement as to whether the sponsor or holder(s) of unsold shares is current on all financial obligations to the cooperative, including, but not limited to, payment of maintenance,... In addition, state whether the sponsor or holder(s) of unsold shares is current on payments of underlying mortgages and all obligations under financing arrangements for which unsold shares have been pledged as collateral....

13 N.Y.C.R.R. § 18.5(c)(3)(vi). According to petitioner, once it was announced on December 12, 1989 that these new requirements would soon be implemented, he was advised by Mr. Koral to include the above information in new amendments, which he did in a later filed fifth amendment to the Edgewood plan. See May 19th letter, p. 10 & Exh. D, p. 4.

■■■ Petitioner's argument is unavailing for a number of reasons. First and foremost, the requirement to disclose arrears in mortgage and maintenance payments was not newly enacted with the 1990 changes. In fact, 13 N.Y.C.R.R. § 18.5(a)(2), which was part of original Part 18 adopted on June 2, 1982, states that:

(2) An amendment must include a representation that all material changes of facts or circumstances affecting the property or the offering are included, unless the changes were described in prior amendment(s) submitted to but not yet filed with the Department of Law.

It is beyond dispute that the failure to make mortgage and maintenance payments is a material change of facts and circumstances. *See State v. Rachmani Corp.,* 71 N.Y.2d 718, 530 N.Y.S.2d 58, 62, 525 N.E.2d 704 (1988)(an omitted fact is material if it would have "significantly altered the 'total mix' of information made

---

**2.** The falsity also results from the representations made in the certification filed with the original plan for the Edgewood property, discussed *infra.*

**3.** According to petitioner, the disclosure requirements resulting from the changes in the law, which became effective August 15, 1990, were disclosed to the real estate bar approximately six weeks later, on December 12, 1989. *See* May 19th Letter, p. 9.

available" to a reasonable investor) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). In addition, Mary DiStephan, an expert witness at trial, made the following statement in her affidavit in Opposition to the Motion to Dismiss:

> Finally, in August, 1990, the Attorney General promulgated regulations expanding the disclosures which would be required even if there were no default, on at least an annual basis, of the sponsor's total financial condition even in other projects where the sponsor or a principal of the sponsor owned in excess of ten percent of the shares or units.... *This requirement to file an updating financial disclosure amendment at least annually expanded and supplemented the already existing requirement (existing almost 30 years) to immediately amend the offering plan whenever there is a material change of fact or circumstance affecting the offering.*

May 19th letter, Exh. A, pp. 5–6 (emphasis added). Therefore, although the 1990 changes delineated the precise financial information to be included in amendments, the duty to disclose sponsor defaults was already well-established.[4] Given this clearly delineated duty, it is inconceivable how any testimony from Richard Koral would impact on petitioner's fraudulent intent. Moreover, the evidence that would have been presented by Richard Koral is ambiguous. During the state court proceeding, petitioner's trial attorney told the judge:

> Mr. Koral will come in and testify that, in fact it was his interpretation and his advice among other attorneys and there

will be documents that we will submit which will show that it was his belief and Mr. Lurie compiled and that when the law changed on October 15[sic], Mr. Lurie had to file those amendments immediately.

A 951. Arguably, Koral's testimony would only explain why Lurie filed an accurate fifth amendment to the Edgewood Plan. The proffer of Koral's testimony does not include any representation by Koral that the fourth amendment to the Edgewood property was done in accordance with then-existing law based on his advice. Koral's proposed testimony is therefore irrelevant to Count 28. The exclusion of irrelevant evidence cannot support a violation of petitioner's Sixth Amendment right to present a defense. *See U.S. ex rel. Ashford v. Director, Illinois Dep't of Corrections*, 871 F.2d 680, 686 (7th Cir.1989), *overruled on other grounds by, Tague v. Richards*, 3 F.3d 1133, 1140 (7th Cir.1993) (such a violation occurs when the "testimonial evidence to be presented by the witness 'was relevant, material, and vital to the defense, and ... the exclusion of that evidence was arbitrary' ")(quoting *Lange v. Young*, 869 F.2d 1008, 1011 (7th Cir.1989)).

Even assuming, *arguendo*, that Koral addressed the content of the fourth amendment, it is nonetheless irrelevant to Count 28 for other reasons—namely the representations made by Lurie himself. The fourth amendment to the Edgewood property, much like the fifth amendment, contains a "No Material Changes" provision wherein Lurie stated that there have been no material changes in the plan despite the fact he was in default on the

---

4. The trial judge also reached this conclusion. During DiStephan's cross-examination, Judge Wittner stated:

> This is a question of law addressed to me in a motion to dismiss by the prior counts. If this amendment, the effective amendment, August 15, 1990, had changed the requirements under the law, I would have had to dismiss the indictment. But in that opinion, [sic] which I addressed all the issues, I found this, indeed, just reiterated what was already his obligations under the law.

Appellant's Appendix ("A") 877. As this is a valid interpretation of state law by a state judge, it is entitled to the presumption of correctness and will not be overturned by a federal court sitting in a *habeas* proceeding. *Cf. Fagan v. Washington*, 942 F.2d 1155, 1159–60 (7th Cir.1991)("When in doubt, we think it both impetuous and impolitic to impute to a state trial judge a misunderstanding of state law.").

mortgage and maintenance payments. Lurie made a similar representation in the certifications filed with respect to the original offering plans, including the offering plan for the Edgewood property. *See* A 784 (where Mary DiStephan testified that "all of the Lurie plans have this identical certification"). With regard to each property, Lurie certified, in part:

I am the sponsor and/or the principle [sic] of sponsor of the offering to convert the subject property to cooperative ownership. I understand that I have primary responsibility for compliance with the provisions of Article 23–A of the general business law, the regulation permigated (ph) by the Attorney General in Part 18, and such are [sic] the laws and regulations as may be applicable.

I certify that the offering plan does and that *all documents submitted hereafter by me which amend or supplement the offering plan will one*, set forth the detailed terms of the transaction and *be complete, current, and accurate* . . . .

Three, not omit any material fact . . . .

Five, not contain any fraud, deception, concealment, suppression, false pretense, or fictitious or pretended purchase or sale. . . .

I understand that violations are subject to the civil and criminal penalties of the general business and penal law.

A 785–86 (emphasis added). When Ms. DiStephan was asked when the certification expires, she responded: "It never expires, it indicates that anything that is filed with this certification, or anything that's filed thereafter, is subject to the certification." A 786.

In short, Lurie twice represented that documents filed in relation to the Edgewood property would contain complete and accurate information, in the original certification and in the amendment itself, when in fact they did not. Consequently, he cannot legitimately argue that he did not know of the falsity of the fourth amendment to the Edgewood property at the time of filing. Any testimony that could be presented by Richard Koral is therefore irrelevant to the issue of Lurie's fraudulent intent. Accordingly, *habeas* relief is again denied as to Count 28.

### *Respondent's Motion for Reconsideration*

#### A. Rule of Lenity

■ Respondents make several arguments in support of their motion for reconsideration. Their first argument addresses the Court's application of the rule of lenity. According to respondents, petitioner had adequate notice that sales must cease during the period in which amendments have not yet been accepted for filing. Such notice is derived from a cross-referencing of New York's General Business Law with its Codes, Rules and Regulations. In particular, New York General Business Law § 352–e(1)(a) states that "[i]t shall be illegal and prohibited for any person . . . to make or take part in a public offering or sale . . . *until there shall have been filed* with the department of law, prior to such offering, a written statement or statements, to be known as an 'offering statement' or 'prospectus'. . ." (emphasis added). "Filing," as defined in 13 N.Y.C.R.R. § 18.1(c)(6), means "the issuance of a letter from the Attorney General stating that an offering plan *or amendment* has been accepted for filing." (emphasis added). Respondents also cite various cases for the proposition that an amendment does not merely supplement the original offering plan but constitutes a new submission of the plan as amended.

This argument, however, misses the mark given the express statutory prohibition found in § 352–e(2). That section states as follows: "No offer, advertisement or sale of such securities shall be made in or from the state of New York until the attorney general has issued to the issuer or other offerer a letter stating that the offering has been filed." The fact that this section does not include the filing of amendments within its purview is significant. This is the section where one would expect a prohibition pertaining to sales

pending the filing of amendments to be found, if one existed. Yet § 352–e(2) contains no such prohibition. Respondents would, however, impute notice from a not-too-obvious cross-referencing of statutory provisions even though an explicit statutory provision governing the matter fails to mention amendments. It is unreasonable to expect a reasonable sponsor to comply with this convoluted notice requirement. This conclusion is supported by the contemporaneous opinion of Judge Patricia Williams in *People v. Dansker* [New York County Indict. No. 11454/92], wherein she states:

> This court finds that, while it may be the Department of Law's *policy* that a sponsor cease cooperative sales pending acceptance for filing of amendments, it is not a *requirement* of the Martin Act nor of any of the regulations promulgated pursuant thereto. The Martin Act requires only that written disclosure be made with the Department of Law given any adverse change in the sponsor's position.

*People v. Dansker*, at pp. 10–11 (emphasis in original).

Respondents have not cited evidentiary matter or a controlling decision which, if considered, would have required this Court to change its earlier conclusion. *See Eisert v. Town of Hempstead*, 918 F.Supp. 601, 606 (E.D.N.Y.1996).

### B. Failure to Exhaust State Remedies

The next argument raised by respondents involves the failure to exhaust state remedies and can be summarily dismissed. Respondents contend that petitioner's rule of lenity claim is barred due to his failure to raise the fair notice requirement as a concept distinct from the rule of lenity until oral argument before this Court. This argument has been fully considered and rejected. *See* Opinion and Order, footnote 7 (the principles of fair notice and the rule of lenity are sufficiently interrelated to bar a finding of waiver on the part of petitioner). Respondents have not raised any new matter or controlling decision for

the Court's consideration. *See Eisert*, 918 F.Supp. at 606 ("standard for granting a motion for reargument is strict 'in order to dissuade repetitive arguments on issues that have already been considered fully by the Court' ") (quoting *Ruiz v. Commissioner of D.O.T. of City of New York*, 687 F.Supp. 888, 890 (S.D.N.Y.), *aff'd*, 858 F.2d 898 (2d Cir.1988)).

### C. Sixth Amendment Claim—Ability to Present a Defense

Respondents final argument pertains to the attorney as witness portion of the Opinion. Respondents correctly point out that this court did not specifically apply the standard for *habeas* review as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in granting the petition on Sixth Amendment grounds. The new standard states:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was made based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(emphasis added).

This standard, particularly § 2254(d)(1), has not yet been interpreted by the Second Circuit. However, several other appellate courts have developed various analytical frameworks in applying the standard. *See, e.g., O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998); *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998)(reasonable jurist approach taken); *Drinkard v. Johnson*, 97 F.3d 751, 767 (5th Cir.1996)(same). The best approach to date can be found in *Matteo v.*

*Superintendent,* 171 F.3d 877 (3rd Cir. 1999), wherein the Third Circuit adopted a modified version of the *O'Brien* framework. With regard to the first step of the analysis, the court stated:

> [W]e hold that the "contrary to" provision of AEDPA requires a federal habeas court first to identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim. Like the First Circuit, we believe this analysis requires "something more than a recognition that the Supreme Court has articulated a general standard that covers the claim." Instead, the inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition. Accordingly, we adopt O'Brien's holding that "[t]o obtain relief at this stage, a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court."

*Id.* at 888 (citations omitted).

Once the federal habeas court determines that the state court decision was not "contrary to" a rule espoused by the Supreme Court, the next step is to determine whether the state court decision was based on an "unreasonable application of" Supreme Court precedent. *Id.* at 889. With regard to this inquiry, the Third Circuit has held:

> [T]he appropriate question is whether the state court's application of Supreme Court precedent was objectively unreasonable. The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.

*Id.* at 889–90.

▆ Here, Supreme Court precedent has established that: (1) a defendant has the right to present a defense; and (2) that right is subject only to reasonable restrictions. The right to present a defense was established in *Washington v. State of Tex-*

*as,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and its progeny. In *Washington,* the Supreme Court stated:

> The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19, 87 S.Ct. 1920. This sentiment was reiterated several years later in *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), wherein the Court stated that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Id.* at 302, 93 S.Ct. 1038. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Id.* at 294, 93 S.Ct. 1038. Although this right is not absolute and may "bow to accommodate other legitimate interests in the criminal trial process," "its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." *Id.* at 295, 93 S.Ct. 1038 (quoting *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969)). Furthermore, this right is an "essential attribute of the adversary system itself." *Taylor,* 484 U.S. at 408, 108 S.Ct. 646.

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a

partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed wither by the prosecution or the defense.

*United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). More recently, the Supreme Court has stated that "criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and *the right to put before a jury evidence that might influence the determination of guilt.*" *Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (emphasis added).

■ The right to present a defense, however, is not absolute. According to the Supreme Court:

A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus " 'bow to accommodate other legitimate interests in the criminal trial process.' " As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate, *only* where it has infringed upon a weighty interest of the accused.

*United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998) (quoting *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987))(other citations omitted)(emphasis added).

Because there is no Supreme Court rule that mandates the admission of the type of evidence in dispute here, it cannot be said that the state court decision is "contrary to" clearly established Federal law as determined by the Supreme Court. The next inquiry, therefore, is whether the state court decision was based on an "unreasonable application of" Supreme Court precedent. This entails identifying the applicable Supreme Court precedent.[5] The applicable precedent, as stated above,

---

5. Respondents cite the following three cases as applicable precedent: *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), and *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). For the following reasons, these cases are factually inapposite to the case *sub judice.* In *Scheffer,* the Supreme Court held that Military Rule of Evidence 707, which makes polygraph evidence inadmissible in court-martial proceedings, does not unconstitutionally abridge the right of an accused to present a defense. 118 S.Ct. at 1263. This holding, however, was rooted in a desire to exclude unreliable evidence. Rule 707 was found to be a "rational and proportional means of advancing the legitimate interest in barring unreliable evidence," *id.* at 1266, because it did not implicate any significant interest of the accused—the accused was not prohibited from testifying in his own behalf, he was only precluded from offering opinion testimony from a polygraph expert to bolster his own credibility. *Id.* at 1268–69. The cases of *Taylor* and *Noble* are equally inapplicable. In *Taylor,* an Illinois trial judge refused to allow an undisclosed defense witness to testify as a sanction for failing to identify the witness in response to a pretrial discovery request. 484 U.S. at 401–02, 108 S.Ct. 646. The Supreme Court held that such a sanction is not absolutely prohibited by the Sixth Amendment's Compulsory Process Clause and found no constitutional error on the specific facts before it. *Id.* at 402, 108 S.Ct. 646. In *Nobles,* a state court judge precluded an investigator from offering impeachment testimony where the defense counsel refused to produce a written report prepared by that investigator. 422 U.S. at 229, 95 S.Ct. 2160. The Court held that the preclusion sanction was an "entirely proper method of assuring compliance with [the state court] order" that did not violate the defendant's Sixth Amendment right to compulsory process. *Id.* at 241, 95 S.Ct. 2160.

firmly establishes a defendant's right to present a complete and full defense subject only to reasonable restrictions. It is against this precedent that the state court decision must be judged.

■ Respondents posit two explanations for the preclusion of Koral's testimony. First, they argue that if Koral had been permitted to testify, petitioner would have gained an unfair tactical advantage in that the jury would be able to conclude that petitioner relied on Koral's testimony without any evidence of petitioner's state of mind. This so-called tactical advantage could easily be prevented by a proper jury instruction. In *Bisno v. United States,* 299 F.2d 711, 720 (9th Cir.1961),[6] the Ninth Circuit found that when defendant's attorney testified but defendant did not, the record was silent as to whether he sought and followed, in good faith, the advice of counsel. Accordingly, although the attorney testified, a specific instruction on advice of counsel was denied. "Under the general instruction given by the district court on specific intent, *the jury was entitled to consider the testimony of [defendant's] counsel for what it was worth and no more." Id.* (emphasis added). Respondents also justify the preclusion of Koral's testimony on the ground that it prevented confusion of the issues. However, respondents fail to identify either the issues that could be confused or the way in which such confusion could be prevented. This justification is, therefore, untenable.

None of the cases cited by the respondents bear any resemblance to this petition. Here, the state court judge excluded the testimony of a defense witness who sought to offer evidence on the issue of fraudulent intent. In *Rock,* the Court enunciated the key concern: the exclusion of evidence is arbitrary or disproportionate *only* where it infringes on a weighty interest of the accused. In *Scheffer,* for exam-

ple, the Court found that it was perfectly acceptable to exclude polygraph evidence which it found to be inherently unreliable. In both *Taylor* and *Nobles,* the preclusion of witness testimony as a sanction for discovery abuse was not disproportionate or arbitrary.

The case here is quite different. Koral's testimony was not precluded because it was unreliable or as a sanction. Rather, it was precluded because the trial judge decided that the defendant was the only witness who was competent to offer testimony regarding his state of mind. In applying the standard set forth in *Rock* and *Scheffer,* this preclusion was both arbitrary and disproportionate in its impact on Lurie's very weighty interest in presenting a defense.

In short, the applicable Supreme Court precedent establishes a defendant's right to present a defense. *See Washington v. Texas; Chambers v. Mississippi.* This right is not absolute, but is subject to reasonable restrictions. *See Rock v. Arkansas, United States v. Scheffer.* Here, the state has offered no reasons for the restriction it imposed. Indeed, the preclusion must be viewed as arbitrary and disproportionate because it *unreasonably* infringed on defendant's weighty interest in presenting a defense. Thus, the state court's preclusion of Koral's testimony was an unreasonable restriction of a right clearly established by Supreme Court precedent (the right to present a defense subject only to legitimate, non-arbitrary interests). Because the state court's preclusion of the testimony in issue was an unreasonable application of federal law as determined by the Supreme Court, the requirements of section 2254(d)(1) are satisfied. The April 26 Opinion and Order is hereby reinstated in full.

---

**6.** Federal habeas courts are not precluded from "considering the decisions of inferior federal courts when evaluating whether the state court's application of the law was reasonable." *Matteo,* 171 F.3d at 890 ("in cer-

tain cases it may be appropriate to consider the decisions of inferior federal courts as helpful amplifications of Supreme Court precedent").

Given the history of this case, I am also issuing a certificate of appealability as to all of the issues raised in the instant petition as they are all debatable among jurists of reason and could be resolved in a different manner. *See United States v. Youngblood,* 116 F.3d 1113, 1113–14 (5th Cir.1997) ("district court did not sua sponte grant or deny a COA"); *United States ex rel. Ayala v. Washington,* 97 Civ. 2864, 1997 WL 627648, at *6 (N.D.Ill. Sept.30, 1997) ("this court sua sponte issues a certificate of appealability"). The Clerk of the Court is directed to close this case.

SO ORDERED: